UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

        v.

MANOLO RIJO,

        Defendant.

REPORT AND
RECOMMENDATION
07-CR-6197

### Preliminary Statement

Defendant Rijo is charged by indictment with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). (Docket # 1). Currently before the Court is a motion by defendant Manolo Rijo to suppress identification evidence. (Docket # 103). Specifically, defendant seeks to suppress evidence relating to the identification procedures conducted by the government, which the government intends to use at trial. (Docket # 103). A suppression hearing was held on August 18, 2009. By text Order of Judge David G. Larimer, dated May 8, 2008, all pretrial matters have been referred to this Court. The following is my Report and Recommendation as to the defendant's suppression motion.

### Relevant Facts

**The November 8, 2007 identification procedure with "Witness A":** Testimony adduced at the suppression hearing revealed that on November 8, 2007, Officers David Simpson and Tim Pierce of the Rochester Police Department ("RPD") met with a witness ("Witness

A") at Witness A's attorney's office to show Witness A a photographic spread of six pictures which included a photograph of defendant Rijo (see "Government Exhibit 1"). Simpson told Witness A that the purpose of their meeting was for Witness A to view photographs, but Simpson did not indicate to Witness A who the photographs were going to be of. Officer Simpson showed Witness A the photo spread (Government Exhibit 1) -- which at the time had no notations or markings on it -- and asked him if he knew any of the individuals in the photo spread. Specifically, Simpson told Witness A to look at all of the photographs in the photo spread, he may or may not know some of the individuals in the photos, and he should inform Simpson if he knows anyone in the photo spread.

Witness A looked at all six photographs in the photo spread and picked out photo # 3 as a person he knew. According to Simpson, Witness A had "no trouble" picking out the individual in photo # 3. Simpson then instructed Witness A to circle photo # 3 and to write down any names of which he knew the person in photo # 3 by. Witness A followed Simpson's instructions and circled the number 3 that was over photo # 3, then wrote down the name "Big Head" above the photograph. Witness A told Simpson that "Big Head" was the name by which he knew the individual in photo # 3. Witness A then wrote his initials above photo # 3 and also signed his name

below the signature line on the photo spread.[1]

Witness A did not give specific details to Officer Simpson with regard to how he knew the individual in photo # 3. Simpson assumed that he knew the selected individual through prior criminal activity. According to Officer Simpson, he never told Witness A the name of the individual in photo # 3 and never made it known to Witness A that he was investigating Rijo. Simpson had a conversation with Witness A regarding the investigation "as a whole," but had not specifically discussed defendant Rijo. Simpson and Witness A had no further conversation regarding the photo spread after the identification was made.

Simpson testified that prior to the meeting on November 8, 2007, he had "a handful" of prior dealings with Witness A, though he could not recall precisely how many times or the dates he had dealt with Witness A. According to Simpson, Witness A was a suspect in a criminal matter, but Simpson did not indicate whether it was the same matter as the investigation that involved defendant Rijo. Simpson did not promise Witness A any benefits in exchange for his cooperation with viewing the photo spread.

**The November 6, 2007 identification procedure with "Witness B":** Testimony adduced at the suppression hearing revealed that on November 6, 2007, Drug Enforcement Administration ("DEA") Special

---

[1] Witness A's initials and signature have been redacted from Government Exhibit 1.

3

Agents Timothy Kernan and Richard Biggs met with a witness ("Witness B") to show the witness a photo array which included a photograph of defendant Rijo (see "Government Exhibit 2"). Kernan had been investigating a matter involving defendant Rijo, and had received the photo array containing defendant Rijo's photograph from Assistant United States Attorney Frank Sherman. According to Kernan, the November 6th meeting with Witness B was held at a pre-arranged location in Rochester, New York that he and Witness B had agreed upon. Witness B did not have an attorney present at the meeting. Kernan told Witness B that he was going to display a photo array for him to look at. Agent Kernan did not tell Witness B why he wanted him to look at the photographs. Kernan testified that Witness B was aware of the on-going investigation involving defendant Rijo.

Prior to displaying the array, Agent Kernan told Witness B that he was going to show him some photographs and it "wasn't necessary for him to recognize anybody in the photo array, but if he did to point him out" and Kernan would then give him further instructions. Kernan then displayed the photo array -- which at that time had no markings on it -- for Witness B to review. Kernan did not indicate in any way which photograph he was interested in, nor did he say the name of the person he was interested in to Witness B. According to Kernan, Special Agent Biggs also did not indicate in any way which particular photograph he was interested

in. Witness B reviewed the photo array and stated that he recognized the person in photo # 3. Agent Kernan testified that Witness B "immediate[ly]" recognized the individual in photo # 3. Witness B did not say how he knew the individual, but told Kernan that he had known the individual in photo # 3 for a long time. Kernan then instructed Witness B to circle the number above photo # 3, to write his initials[2] and the date above photo # 3, and to put the name of the person as Witness B knew him below the photograph.[3] Kernan wrote the date and time of the meeting (November 6, 2007; 3:25 p.m. [see Government Exhibit 2]), and his name on the bottom of the photo array, and Special Agent Biggs also signed the photo array as a witness to the identification procedure.

Kernan testified that he had met Witness B prior to the November 6, 2007 meeting and had previously shown other photographs to Witness B. According to Kernan, Witness B did not receive any benefits for looking at the photo array or for his cooperation, despite the fact that at the time of the November 6th meeting he was a defendant in a criminal matter involving an on-going investigation.

---

[2] Witness B's initials have been redacted from Government Exhibit 2.

[3] During the suppression hearing Kernan was never asked what names Witness B wrote below photo # 3. The Court, having reviewed Government Exhibit 2, notes that "Gaya/Teniente" is written below photo # 3.

5

## Discussion

Defendant Rijo moves to suppress evidence obtained by Officer Simpson and Special Agent Kernan relating to the identification procedures they used in connection with the abovementioned photo spread. Specifically, Rijo argues that the identification procedures were "unnecessarily suggestive and conductive [sic] to a substantial likelihood of misidentification." See Affirmation of Michael L. D'Amico, Esq. annexed to Docket # 103 at ¶ 69.

The Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons v. United States, 390 U.S. 377, 383 (1968). Accordingly, a defendant's due process rights "includes the right not to be the subject of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification,'" and this right "extends to photographic arrays." United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994)(quoting Simmons, 390 U.S. at 384). Accordingly, a court may set aside an identification procedure by photograph where said procedure "was so impermissibly suggestive as to give rise to" such a substantial likelihood of misidentification. Simmons, 390 U.S. at 384.

When faced with a challenge to a pretrial identification procedure, "a court must examine the procedures employed in light of the particular facts of the case and the totality of the

surrounding circumstances." Thai, 29 F.3d at 808 (emphasis added). To decide whether a photographic array is unduly suggestive, a court must consider several factors, including the size of the array, the manner of presentation by the government officers, and the contents of the array. See id.; see also United States v. Concepcion, 983 F.2d 369, 377 (2d. Cir. 1992). In the Second Circuit, the use "of a very small number of photographs" or "the utterance of suggestive comments [by government officers] before an identification is made" are considered "inherently prejudicial" presentations. See Thai, 29 F.3d at 808; Concepcion, 983 F.2d at 377. If the aforementioned factors are satisfied, the "principal question is whether the picture of the accused ... so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." Concepcion, 983 F.2d at 377 (quotations and citations omitted). It is not required, however, that all of the photographs in the array be uniform with respect to a given characteristic. If the court finds that the identification procedures were not unnecessarily suggestive, then it will likewise find that there are no due process obstacles to admissibility and, therefore, the identification evidence will not be suppressed.

Here, the photographic arrays that were displayed by Officer Simpson and Special Agent Kernan to Witness A and Witness B consisted of six photographs. See United States v. Bennett, 409

7

F.2d 888, 898 (2d Cir. 1969)(finding that six photographs is an acceptable number for a photographic identification array). The photographs themselves were generally similar, including six men of similar age, complexion, build, hair color and eye color. See Government Exhibits 1, 2. Neither Officer Simpson or Special Agent Kernan said anything to Witness A or Witness B which was unduly suggestive or compromised the identifications. On both occasions, they merely placed the photographs -- which were free of marks, names or any distinctive characteristics around defendant Rijo's photograph -- in front of the witnesses and asked them to view them. No suggestions were made to the witnesses during the process of showing the photographs.

The Court finds that neither the photographs themselves nor their presentation to the witnesses were sufficiently suggestive to constitute violations of due process. There is nothing unduly suggestive on the face of the photo array and the defendant has not produced any evidence to show that the identifications violated his due process rights. See Thai, 29 F.3d at 809 (concluding that the photo array was not unduly suggestive because "[a]ll of the men pictured appeared to be of roughly the same age and had similar hair color"); United States v. Rosa, 11 F.3d 315, 330-31 (2d Cir. 1993)(concluding that the identification procedure was not unduly suggestive because the photo array "was not impermissibly small" the defendant's photograph did not bear "any identifying marks,"

and the government agent did not utter any inappropriate suggestions). Accordingly, it is my Report and Recommendation that defendant Rijo's motion to suppress the identification evidence be **denied**.

### Conclusion

For the foregoing reasons, it is my Report and Recommendation that Rijo's motion to suppress be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: October 15, 2009
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: October 15, 2009
Rochester, New York

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).